IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WALDEN SOLAR PA JEFFERSON LLC,<br><br>Plaintiff,<br><br>v.<br><br>BARBIERI LAND MANAGEMENT LLC,<br><br>Defendant. | ELECTRONICALLY FILED<br><br>Civil Action No. 2:25-cv-00083 |

## **COMPLAINT**

Walden Solar PA Jefferson LLC ("Walden") hereby makes this Complaint against Barbieri Land Management LLC ("Barbieri").

## **INTRODUCTION**

1. Walden is the developer of a solar renewable energy project in the Township of Warsaw, Jefferson County, Pennsylvania, for which Walden has been actively engaged in the design, engineering, procurement, and eventual operation of solar photovoltaic generation facilities ("Project"). To date, Walden has expended more than $8.5 million to develop the project, has commenced tree removal and is on the cusp of entering the construction phase of this roughly $130 million dollar project.

2. Barbieri is the fee owner of approximately 127 acres of real property ("Property") that are central to the Project because the Property is the location of both solar panel arrays and the sole point of interconnection to the PJM Interconnection regional electric grid, where an electrical substation will be constructed that will enable photovoltaic energy generated from the solar arrays to be transported on the grid.

3. Given the central role of Barbieri's property in development and eventual operation of the Project, Walden and Barbieri entered an Option For Solar Lease Agreement ("Lease Option"), effective as of April 14, 2020, that gave Walden the "exclusive option to lease some or all of the Property" (with a limited exception not relevant here) "to develop, install, own, maintain and operate solar photovoltaic generation equipment thereon." (Exhibit 1, Lease Option, at 1.)

4. Walden has performed its obligations under the Lease Option, including payment of rent.

5. On or about January 25, 2023, Walden timely and properly exercised the first Option Period Extension under the Lease Option, extending the Option for an additional year.

6. On February 6, 2023, after Walden had exercised the Option extension, Joe Barber (the principal of Barbieri) emailed Walden to advise that "Barbieri Land Management is withdrawing from the solar project effective immediately." (A true and correct copy of this email is included as Exhibit 2.)

7. On February 8, 2023, after Walden disputed Barbieri's ability to withdraw from the Lease Option, Barber and Barbieri reiterated that Barbieri "has withdrawn from the agreement" and further stated that "Access to the said property is denied." (Exh. 2.)

8. Barbieri's purported withdrawal from the Lease Option and associated denial of access to the property were breaches and/or anticipatory breaches of the Lease Option and threatened irreparable harm to Walden as Walden could not develop the Project without the Property subject to the Lease Option.

9. On March 9, 2023, through counsel, Barbieri rescinded "any prior denial of access" and began cooperating on a revised, recordable Memorandum of Lease agreement. (A true and correct copy of this email is included as Exhibit 3.)

10. On February 13, 2024, Walden contacted Barbieri to provide a project permitting update and confirm that Walden had timely and properly exercised the second Option Period Extension via the Notice delivered on February 12, 2024. (A true and correct copy of this email is included as Exhibit 4.) Walden provided an updated site plan depicting the planned infrastructure on the Property and invited Barbieri to discuss the site plan should he have any questions or concerns. Walden received no response from Barbieri.

11. Walden left voicemails for Barbieri on October 4, 2024, and December 2, 2024 to alert Barbieri that all state-level permits had been secured and the project would be entering construction in 2025. Barbieri was urged to contact Walden to discuss lease execution and construction schedule. Walden received no response from Barbieri.

12. On October 23, 2024, Walden timely and properly exercised the third Option Period Extension under the Lease Option, extending the Option for an additional year. Walden's notice was delivered to Barbieri by Federal Express on November 5, 2024. (A true and correct copy of this notice is included as Exhibit 5.)

13. On December 20, 2024, Walden sent Notice to Barbieri that Walden had exercised the Lease Option and delivered, by Federal Express on December 23, 2024, together with a map of the area that would become subject to the Lease. (A true and correct copy of this notice is included as Exhibit 6.) Walden received no response from Barbieri.

14. On December 30, 2024, Walden called and emailed Barbieri and subsequently sent Barbieri the Lease Agreement executed by Walden, delivered by Federal Express on

December 31, 2024, with instructions for execution by Barbieri and a return prepaid Federal Express envelope for returning the fully executed Lease to Walden. (A true and correct copy of this email and attachments is included as Exhibit 7.) Walden received no response from Barbieri to the call, email or FedEx parcel.

15. On January 3, 2025 and January 10, 2025, Walden emailed and called Barbieri to confirm Barbieri's execution of the lease. (True and correct copies of these emails are included as Exhibits 8 and 9.) Walden received no response from Barbieri.

16. On January 7, 2025, counsel for Walden sent Barbieri a letter advising, once again, that Walden exercised its Option to lease portions of the Property and that the Lease Option required Barbieri to execute the Lease within ten (10) days of Walden's exercise of the Option. Because Barbieri had yet to execute the Lease, Walden advised that it would seek specific performance, injunctive relief and other equitable relief should Barbieri fail to execute the Lease and cooperate with Walden in compliance with its contractual obligations. (A true and correct of this letter is included as Exhibit 10.) Walden's counsel received no response from Barbieri.

17. Walden is entitled to specific performance of the Lease Option and an injunction barring Barbieri from denying access to the Property and from withholding cooperation to Walden in its development of the Project. Walden also seeks direct and consequential damages arising from Barbieri's failure to cooperate and other breaches, including but not limited to all costs incurred and losses sustained, along with attorneys' fees and costs.

THE PARTIES

18. Walden Solar PA Jefferson LLC is a Delaware limited liability company with its principal place of business in New York City. The sole member of Walden is Walden

Renewables Development LLC, a Delaware limited liability company with offices in New York, New Hampshire, Maine and Vermont.

19. Upon information and belief, Barbieri is a Pennsylvania LLC with its principal place of business at 3661 RTE 28N Brookville, PA 15825.

## JURISDICTION AND VENUE

20. This Court has original jurisdiction over this civil action under 28 U.S.C. § 1332(a) on the grounds that complete diversity exists and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

21. Walden Renewables Development LLC ("WRD") is the sole member of Walden Solar PA Jefferson. WRD's sole member is WRD Topco LLC ("WRD Topco"), a Delaware limited liability company with its principal place of business in New York. WRD Topco's members are WRD Management Holdco I LLC ("WRD Management Holdco I") and RWE Principal Investments USA LLC ("RWEPIUSA"). None of the members of WRD, WRD Topco, WRD Management Holdco I, and RWEPIUSA is a Pennsylvania citizen.

22. Barbieri is a Pennsylvania LLC.

23. Upon information and belief, each member of Barbieri is a citizen of Pennsylvania.

24. Walden believes and therefore avers that all members of Walden are citizens of different states than all members of Barbieri and that no member of either Walden or Barbieri is non-diverse.

25. As the at-issue Property is located in Jefferson County, Pennsylvania, venue is proper because this is the judicial district in which "a substantial part of the events or omissions

giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391.

## FACTS

26. Walden's principals have extensive and deep experience developing renewable energy projects in Pennsylvania and elsewhere, including solar and wind, and a deep knowledge of the multitude of regulatory, commercial, financial, construction, logistical, and other challenges associated with developing a proposed project that reaches commercial operation.

27. Those challenges often cause projects to fail to reach commercial operation.

28. Based on their experience developing solar projects, Walden's principals determined that the geographic and solar characteristics in Jefferson County make it a feasible and desirable location for a solar photovoltaic project.

29. Walden began investigating the Project (known as "Squab Solar") in 2018.

30. In March 2019, Walden submitted an Interconnection Application expressing its desire to interconnect to the existing West Penn Power Company 138 kV transmission line at coordinates LAT: 41.1769280 LONG: -78.9712690, roughly 1.5 miles west of the Barbieri Property.

31. At the time Walden submitted the Interconnection Application, the PJM Interconnection Rules (which govern new generator interconnections to ensure system reliability and safety) did not require proof of control of land for the Point of Interconnection ("POI"), only for the arrays. Instead, the requirement to demonstrate evidence of land control for the POI had to occur at the beginning of the Facility Study, the purpose of which was to determine final interconnection costs based on not just system impacts, but the detailed location of the substation, including site specific civil and environmental considerations.

32.     The Facility Study began on or about May 29, 2020, such that Walden had to demonstrate control of the land where the Project was to be constructed, including the location of the electrical substation necessary and critical to electrical distribution to the power grid, by that date.

A.     **The Lease Option**

33.     In March 2020, Walden and Joe Barber (the principal of Barbieri Land Management) commenced discussions concerning a lease of real property controlled by Mr. Barber or an affiliated entity.

34.     On March 30, 2020, Walden provided Mr. Barber with a draft of the Option and Lease Agreement for his review and consideration.

35.     On April 16, 2020, Mr. Barber signed and notarized the Lease Option as the Authorized Signatory for Barbieri Land Management and returned it to Walden.

36.     Walden executed the Lease Option on April 22, 2020, providing a copy to Mr. Barber.

37.     Walden has fully and/or substantially performed its obligations under the Lease Option, including the quarterly payment of Option Fees to Barbieri, which were based on $2 per acre per month during the Initial Term, and an additional $1 per acre per month for each Extension Term.  Barbieri accepted the payments from Walden through the Initial Term and Extension Terms, as evidenced by the correspondence between Walden and Lori Yohe, dated February 26, 2024, as well as bank records.  (A true and correct copy of this email is included as Exhibit 11.)

38.     The Lease Option confers various rights on Walden:

    a.     During the Term of the Lease Option, Walden "shall have the exclusive right and option ("the Option") to lease all or a portion of the Property

7

        from the Owner, upon the terms and conditions set forth herein." (Exh. 1, ¶ 1.)

    b.    Following the end of the three-year Initial Term, Walden had "the option to extend the Initial Term of this Option Agreement for up to three (3) successive periods of one (1) year each … in each case exercisable by [Walden] providing written notice of such extension to Owner no fewer than sixty (60) days nor more than one hundred eighty (180) days prior to the end of the then-current Initial Term or Renewal Term, as applicable, whereupon the Term of this Option Agreement shall be deemed extended for the applicable Renewal Term on the terms and conditions set forth herein." (Exh. 1, ¶ 2.)

    c.    If Walden "timely exercises the Option, then the Owner and [Walden] shall enter into the Lease within ten (10) days following [Walden's] exercise of the Option." (Exh. 1, ¶ 4.) The Lease was attached to the Lease Option.

    d.    Barbieri had an affirmative obligation to "cooperate, at no cost to the Owner, with [Walden's] efforts to obtain any and all final and unappealable approvals for the development of the Property for [Walden's] intended use." (Exh. 1, ¶ 5(b).)

39.    In particular, Walden, "its employees, invitees, agents, contractors and subcontractors shall have unrestricted access to the Property at all times during the Term and shall have the right to engage a soil consultant, environmental consultant, civil engineer, attorney and/or other professionals to perform an inspection of the Property, the development potential of the Property, and the condition of title thereto. The aforesaid inspections ("Due Diligence Inspections") may include, but is not limited to, (i) a Phase I and II environmental site assessment and soils testing, (ii) a wetlands and floodplain delineation and analysis, geotechnical studies, a storm water management evaluation, and an analysis as to the amount and nature of fill material, (iii) an inspection as to the ability to develop the Proposed Project in compliance with all municipal zoning, subdivision, land development and other applicable ordinances, (iv) an inspection as to the availability of all utilities required to service the Proposed Project, (v) an inspection as to the condition of the title to the Property…, and (vi) any other reviews,

inspections or interviews [Walden] deems necessary in connection with [Walden's] proposed plans for the development of the Property for the Proposed Project." (Exh. 1, ¶ 7(a).)

40. Further, Walden "shall have the right to apply for and obtain all governmental permits, licenses, certificates, approvals, variances and other entitlements necessary for the installation and operation of [Walden's] Proposed Project on the Property." Barbieri, in turn, "consents to any action taken by [Walden] in applying for and obtaining any and all Permits…." (Exh. 1, ¶ 7(c).)

41. Barbieri represented in the Lease Option that the "execution and delivery of this Agreement is binding upon [Barbieri]…." (Exh. 1, ¶ 6(a).)

42. Barbieri's "failure … to perform any of its duties and obligations … shall constitute an event of default" and entitles Walden "to enforce the terms of this Option Agreement, including specific performance." (Exh. 1, ¶ 8.)

**B.  Walden's Reliance On The Lease Option**

43. Walden materially and reasonably relied on the Lease Option in furtherance of developing the Project.

44. Walden used the fully executed Lease Option to fulfill the PJM Interconnection Site Control requirements necessary to enter the Facility Study phase. Walden submitted the Lease Option to PJM (a regional transmission organization that coordinates the movement of wholesale electricity), while Walden's designer TRC designed Walden's Point of Interconnection and collector substations using the Barbieri parcel.

45. The Point of Interconnection is located on Barbieri's Property for which Walden has the Lease Option.

46. Walden also relied on the Lease Option in entering the Facility Study Agreement, a necessary precondition to developing the Project.

47. Once Walden submitted the Lease Option to PJM and executed the Facility Study Agreement, the Point of Interconnection was not permitted to move under PJM OATT 36.2A.4.

48. Walden completed land acquisition efforts in early 2021, and it authorized TRC to complete the Squab Solar project NPDES and local permitting design in Q1 2021.

49. Walden submitted the NPDES application in May 2021 and was assigned NPDES Permit Application No. PAC330029. The Barbieri parcel was included in this design, hosting the Point of Interconnection.

50. Walden completed additional geotechnical studies and Phase I ESA due diligence in 2022.

51. PJM provided updated interconnection study results in May 2022 and August 2022, allowing the Project to move forward toward construction.

52. In order to complete the NPDES design, Walden must complete infiltration testing at all proposed stormwater BMP (Best Management Practices) locations, including on the Barbieri property. This testing was originally scheduled for February 14, 2023, but Mr. Barber on behalf of Barbieri denied access to the Property. (Exh. 2.)

53. Walden received the Facility Study Report from PJM and West Penn Power on March 29, 2023, as well as the Interconnection Services Agreement (ISA) and Interconnection Construction Services Agreement (ICSA). Walden executed the ISA and ICSA on April 4, 2023 and received fully executed copies of both agreements on April 17, 2023.

54. Subsequently, as a result of a second phase of the Project receiving final interconnection results and PJM having completed its queue reform process, Walden entered into

a new Generator Interconnection Agreement ("GIA") and Interconnection Construction Services Agreement with PJM and affiliates of West Penn Power that replaced the original ISA and ICSA. Under the various interconnection agreements Walden has now posted an irrevocable letter of credit in favor of PJM in the amount of $4.74M to secure its obligations under the agreements.

55. Under the GIA and ICSA the Project is committed to, among others, the following milestones:

  a. Site Permits: On or before January 7, 2025, Walden (as the Interconnection Customer (IC)) must demonstrate that it has obtained any necessary local, county, and state site permits. That milestone has been satisfied.

  b. Ground Breaking and Major Electrical Equipment Acquisition: On or before June 10, 2025, Walden must demonstrate that it has acquired major electrical equipment to support the project, and can break ground on the construction of the facility.

  c. Major Equipment Delivery, Site Work, and Desired Back Feed Power: On or before December 9, 2025, Walden must demonstrate that at least 20% of construction site work will be complete, all electrical generating units must be on site, and that Walden will be prepared for Back Feed Power from the Transmission Owner on this date.

  d. Commercial Operation: On or before July 10, 2026, IC will reach commercial operation of the solar project.

**C.     Barbieri's Breach Of The Lease Option**

56. The Lease Option has an Initial Term of three (3) years commencing April 14, 2020 and expiring on or about April 14, 2023, unless renewed by Walden.

57. During the three-year Initial Term, Walden paid all rents due to Barbieri, which accepted those rents, and Walden fully and/or substantially complied with all of its obligations under the Lease Option.

58. The Lease Option gives Walden the unilateral right to extend the Lease Option for three (3) successive periods of one year each (each a "Renewal Term").

11

59. Based on Project progress during the Initial Term, Walden elected to exercise the first Renewal Term.

60. On January 25, 2023, Walden timely sent its written Notice of Exercise of Option Period Extension to Barbieri Land Management by electronic mail and certified mail (return receipt requested and received), thereby complying with Paragraph 2(a) of the Lease Option and triggering the Renewal Term. (A true and correct copy of the Notice is attached hereto as Exhibit 12.) ("January 25 Notice")

61. The January 25 Notice made it clear to Barbieri that Walden was proceeding with the Project. Walden advised Barbieri that Walden "has received a final impact study report and now expects to receive an executable ISA in the first quarter of 2023," that Walden "has engaged a Pennsylvania civil engineering firm to support all state and local permitting efforts," and that Walden "intends to file all state and local permit applications in Q2 2023 and receive all construction approvals in 2024." (Exh. 12.)

62. After Walden had already extended the Lease Option, Barbieri (through Joe Barber) sent an email on February 6, 2023, to Jonathan Willson of Walden stating: "With this email Barbieri Land Management is withdrawing from the solar project effective immediately. Thank you for the consideration." (A true and correct copy of the February 6 email is attached hereto as Exhibit 2.) ("February 6 Email")

63. The February 6 Email was the first communication from Barbieri to Walden following Walden's exercise of the first Renewal Term.

64. On February 7, 2023, Walden (through Jonathan Willson) sent an email to Barbieri stating that "Pursuant to our Option Agreement, executed on April 14, 2020, Barbieri Land Management does not have the right to withdraw from the Option." Walden explained that

the Lease Option had been extended by the Notice and that Walden "will be submitting state and local site approval applications in the Spring of 2023." (A true and correct copy of the February 7 email is attached hereto as Exhibit 2.) ("February 7 Email")

65. On February 8, 2023, Mr. Barber responded to the February 7 Email, stating that "As per our previous email, Barbieri Land Management has withdrawn from the agreement. Access to said property is denied." (Exh. 2.)

66. Walden tried repeatedly to speak with Mr. Barber, with Mr. Willson calling and emailing Mr. Barber. Mr. Barber failed to respond to either the phone calls or emails.

67. On February 10, 2023, counsel for Walden sent a letter to Mr. Barber and Barbieri advising that the Lease Option remains in effect and was timely extended for the first Renewal Term, that Barbieri's actions represented a breach of the Lease Option, and that Walden needed access to the Property for its consultants needed to access the Property beginning on February 14. (A true and correct copy of that letter is attached hereto as Exhibit 13.) ("February 10 Letter")

68. Counsel for Walden also emailed and called Mr. Barber to discuss Barbieri's purported withdrawal from the Lease Option and denial of access.

69. On February 27, 2023, counsel for Barbieri contacted counsel for Walden to facilitate an "amicable resolution". (A true and correct copy of that email is attached hereto as Exhibit 3.)

70. Neither Mr. Barber nor anyone else on behalf of Barbieri has identified any legal basis for Barbieri to withdraw from the Lease Option and deny access to the Property to Walden and through Barbieri's counsel, Mr. Barber's attempt to deny access was rescinded on March 9, 2023. (Exh. 3.)

71. Walden received an email from Lori Yohe, acting as bookkeeper for Barbieri, indicating a discrepancy in the 2023 1099MISC. Walden worked with Ms. Yohe to correct the discrepancy and reissue a quarterly payment to Barbieri, payment which was accepted by Barbieri. (A true and correct copy of that email is attached hereto as Exhibit 11.)

72. Walden timely and properly exercised the second Option Period Extension via the Notice delivered on February 12, 2024, and followed up with an email on February 13, 2024 that provided a site plan depicting the Property and an update on project permitting and construction. (True and correct copies of that email and Notice is attached hereto as Exhibits 4 and 14.)

73. On October 23, 2024, Walden timely and properly exercised the third Option Period Extension under the Lease Option, extending the Option for an additional year. Walden's notice was delivered to Barbieri by Federal Express on November 5, 2024. (Exhibit 5.)

74. The Lease Option does not give Barbieri the right to withdraw from the Lease Option or to deny access to Walden inasmuch as Walden has fully and/or substantially performed its obligations under the Lease Option and exercised the Renewal Terms in a timely and proper manner.

75. Neither Mr. Barber nor anyone else on behalf of Barbieri has alleged an event of default by Walden under the Lease Option.

76. Section 4 of the Lease Option reads "If [Walden] timely exercises the Option, then [Barbieri] and [Walden] shall enter into the Lease within ten (10) days following [Walden's] exercise of the Option." (Exh. 1, ¶ 4.) On December 20, 2024, Walden provided Notice to Barbieri that Walden had exercised the Lease Option and on December 30, 2024 Walden delivered a partially executed copy of the Lease Agreement for Barbieri's execution.

(Exhs. 6 and 7.) Neither Mr. Barber nor anyone else on behalf of Barbieri has responded despite repeated email, phone, and overnight parcel outreach.

## Count I – Breach of Contract

77. Walden incorporates by reference the foregoing paragraphs as if set forth at length herein.

78. The Lease Option is an enforceable contract.

79. Walden performed and/or substantially performed its obligations under the contract, including but not limited to paying rent to Barbieri, and at all time took actions in reliance on the Lease Option.

80. Walden timely and properly exercised the first Renewal Term under the contract.

81. Barbieri breached and/or anticipatorily breached the contract in the following ways:

   a. Barbieri purported to withdraw from and thereby terminate the Lease Option in violation of Paragraph 2(a);

   b. Barbieri denied Walden access to the Property in violation of Paragraph 7(a);

   c. Barbieri has failed and refused to cooperate with Walden in violation of Paragraphs 5(b)(v) and 7(c);

   d. Barbieri has failed and refused to timely execute the Lease in violation of Paragraph 4; and

   e. Such other breaches as are identified.

82. Barbieri's breaches are without justification or excuse.

83. Barbieri's breaches cause harm to Walden as they delay the Project and threaten the Project's viability, both in terms of the Project's ability to proceed generally and specifically in terms of achieving various contractual commitments that Walden has with third parties.

## Count II – Breach of Contract/Specific Performance

84. Walden incorporates by reference the foregoing paragraphs as if set forth at length herein.

85. The Lease Option is an enforceable contract.

86. Barbieri has breached the contract as set forth above.

87. Barbieri's breaches are without justification or excuse.

88. Walden has the right to specific performance of Barbieri's obligations under Paragraph 8 of the Lease Option.

89. Walden seeks specific performance of Barbieri's obligations under the Lease Option during the first Renewal Term.

## Count III – Preliminary and Permanent Injunctive Relief

90. Walden incorporates by reference the foregoing paragraphs as if set forth at length herein.

91. The Lease Option is an enforceable contract.

92. Barbieri breached the Lease Option without justification or excuse as set forth above.

93. Barbieri's breach of the Lease Option causes, or threatens to cause, irreparable harm to Walden through the loss of a business opportunity and market advantage, Project delays, and potential breach of third-party agreements.

94. An injunction is necessary to prevent immediate and irreparable harm which cannot be adequately compensated by damages.

95. Greater injury would result from refusing an injunction than from granting it.

96. An injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct inasmuch as Walden would have access to the Property and the ability to proceed with on-site activities and obtain Barbieri's cooperation necessary to confirm that Walden has control or the right to control the Property.

97. Walden's right to relief is clear, and Walden is likely to prevail on the merits.

98. An injunction for specific performance and to prohibit Barbieri from denying access to the Property and otherwise interfering with Walden's rights under the Lease Option and Lease is reasonably suited to abate the offending activity.

99. An injunction for specific performance requiring Barbieri to execute the Lease in compliance with Paragraph 4 of the Lease Option is also reasonably suited to abate the offending activity.

100. A preliminary injunction will not adversely affect the public interest.

101. The Court should also enter a permanent injunction during the first Renewal Term, conditioned on Walden continuing to pay rent as provided in the Lease Option.

## Count IV – Declaratory Judgement

102. Walden incorporates by reference the foregoing paragraphs as if set forth at length herein.

103. There is a justiciable case or controversy between the parties concerning the Lease Option.

104. Walden has properly extended the term of the Lease Option.

105. Barbieri has failed to cooperate with Walden in violation of Paragraphs 5(b)(v) and 7(c) of the Lease Option.  Barbieri has also failed and refused to execute the Lease in violation of Paragraph 4 of the Lease Option.

106. Walden seeks a declaratory judgment declaring the parties' respective rights and obligations under the Lease Option, including that the Lease Option remains in full force and effect and that Barbieri is obligated to execute the Lease in compliance with Paragraph 4 of the Lease Option.

## Request for Relief

107. For the foregoing reasons, Walden seeks the following relief for each of its Counts:

   a. a preliminary injunction for specific performance that requires Barbieri to comply with its obligations under the Lease Option;

   b. a permanent injunction for specific performance that requires Barbieri to comply with its obligations under the Lease Option;

   c. a preliminary and permanent injunction for specific performance requiring Barbieri to execute the Lease in compliance with Paragraph 4 of the Lease Option;

   d. a preliminary and permanent injunction enjoining Barbieri from denying access to the Property to Walden and from in any way interfering with Walden's rights under the Lease Option and Lease;

   e. a declaratory judgment that the Lease Option is in effect, that Barbieri did not and cannot withdraw from the Lease Option, and that Walden properly exercised renewals under the Lease Option;

    f.  a declaratory judgment that Barbieri is obligated to execute the Lease in compliance with Paragraph 4 of the Lease Option; and

    g.  compensatory and consequential damages incurred by Walden, including all losses caused by Barbieri based on its refusal to cooperate and delays to the Project;

    h.  attorneys' fees, costs and expenses; and

    i.  such other and further relief as is just and proper.

Date: January 17, 2025                        Respectfully submitted,

                                      */s/ John K. Gisleson*
John K. Gisleson, PA 62511
Matthew H. Sepp, PA 85406
MORGAN, LEWIS & BOCKIUS LLP
One Oxford Centre
Thirty-Second Floor
Pittsburgh, PA  15219
Telephone: (412) 560-3300
Facsimile: (412) 560-7001
john.gisleson@morganlewis.com
matthew.sepp@morganlewis.com

*Counsel for Plaintiff Walden Solar PA Jefferson LLC*